# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

GLENDA NISSEN,

    Plaintiff,

v.

MARK LINDQUIST, et al.,

    Defendants.

CASE NO. C16-5093 BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendants Mark Lindquist ("Lindquist"), Mark and Chelsea Lindquist, and Pierce County's ("County") (collectively "Defendants") motion to dismiss. Dkt. 56. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On February 1, 2016, Plaintiff Glenda Nissen ("Nissen") filed a complaint against Defendants in Pierce County Superior Court for the State of Washington. Dkt. 1, Ex. A. Nissen asserted causes of action for violations of her constitutional rights, abuse of process, invasion of privacy, constructive discharge, outrage, violations of Washington

Law Against Discrimination, RCW Chapter 49.60 ("WLAD"), and breach of contract. *Id.*

On February 5, 2016, Defendants removed the matter to this Court. Dkt. 1.

On February 22, 2016, Defendants moved to dismiss. Dkt. 9. On April 20, 2016, the Court granted the motion and granted Nissen leave to amend. Dkt. 18.

On April 28, 2016, Nissen filed an amended complaint. Dkt. 20. On May 12, 2016, Defendants filed a motion to dismiss. Dkt. 25. On August 11, 2016, the Court granted the motion in part and requested supplemental briefing. Dkt. 30. On January 3, 2017, the Court granted the motion in part and requested supplemental briefing. Dkt. 37.

On January 20, 2017, Nissen filed a motion to amend. Dkt. 39. On March 13, 2017, the Court granted the remainder of Defendants' motion and granted Nissen's motion. Dkt. 44.

On March 17, 2017, Nissen filed a second amended complaint ("SAC"). Dkt. 45. On September 7, 2017, Defendants filed a motion to dismiss the SAC. Dkt. 56. On September 25. 2017, Nissen responded and filed an appendix for the convenience of the Court. Dkt. 57. On September 29, 2017, Defendants replied and moved to strike the appendix. Dkt. 58.[1]

## II. FACTUAL BACKGROUND

Nissen was a police officer with the County. Nissen allegedly spoke out against Lindquist as a prosecutor. Nissen also filed public record act requests that subsequently

---
[1] The Court denies the motion to strike as moot because the appendix is irrelevant to the consideration of any issue in the case.

turned into state court cases seeking to obtain records that Lindquist refused to produce. Nissen alleges that she experienced retaliation for her actions, which led to a settlement agreement between her and the County. Nissen, however, alleges that the County and its employees failed to honor the agreement and continued to retaliate against her. Eventually, Nissen resigned alleging a constructive discharge.

## III.  DISCUSSION

Instead of attacking the complaint as a whole, Defendants attack specific allegations and arguments as being implausible. Nissen has definitely provided ample irrelevant and implausible material. Nissen, however, must only assert one plausible allegation for each element of a claim to survive a motion to dismiss.[2] As discussed below, Nissen has met this minimal burden on all but one of her claims.

**A.    Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a

---

[2] Because of the breadth of Nissen's allegations, the Court envisions the possibility of multiple summary judgment motions to narrow the issues for trial. This may require a scheduling conference in which Nissen outlines each theory under each claim in an effort to assure that the parties and the Court have a clear picture of the issues in this proceeding.

"formulaic recitation" of the elements of a cause of action. *Twombly*, 127 S. Ct. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

**B.     First Amendment Retaliation**

"In order to state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took adverse employment action; and (3) that his or her speech was a substantial or motivating factor for the adverse employment action." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (internal quotations omitted).

   **1.     Public Concern**

An employee's speech is protected under the First Amendment if it addresses "a matter of legitimate public concern." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968). "[S]peech that concerns 'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government merits the highest degree of first amendment protection." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940)). On the other hand, speech that deals with "individual personnel disputes and grievances" and that would be of "no relevance to the public's evaluation of the performance of governmental agencies" is generally not of "public concern." *Id*.

In this case, Defendants argue that Nissen's speech was a matter of personal interest. Dkt. 56 at 14. Defendants, however, rely on an extremely narrow interpretation of matters of public concern. While Nissen may have had a personal interest in the

content of the public records she sought, the pursuit of the records clearly involved an issue "about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *McKinley*, 705 F.2d at 1114. In fact, one of Nissen's cases established new law in the state regarding whether a member of society could obtain information generated by a public official on his or her private device. *See Nissen v. Pierce Cty.*, 183 Wn.2d 863, 888 (2015) ("Records that an agency employee prepares, owns, uses, or retains on a private cell phone within the scope of employment can be "public records" of the agency."). Therefore, the Court concludes that Nissen has asserted an allegation that she engaged in constitutionally protected activity.

**2. Other Elements**

Nissen must also provide allegations that Defendants took an adverse employment action motivated by her speech. *Coszalter*, 320 F.3d at 973. The Busto report submitted with Nissen's complaint provides sufficient information to meet these elements. In general, Mark Busto, the independent attorney hired to investigate some whistleblower complaints, found that the prosecutor's office made specific requests to the sheriff's office to interfere with or alter Nissen's conditions of employment. Dkt. 45-1 at 33–35. These requests went beyond "minor acts" or "name calling," as Defendants argue, and amounted to significant interference with Nissen's work and with transfers within the sheriff's office. *Id*. Nissen's complaint asserts allegations consistent with the Busto report. Dkt. 45, ¶¶ 6.38–6.41.

Similarly, the Busto report cites evidence supporting causation. Specifically, Busto found that the prosecutor's office placed limitations on Nissen "because she had filed numerous lawsuits and complaints against the office." Dkt. 45-1 at 35. Nissen's complaint asserts allegations consistent with these findings, which are sufficient to state a claim. Therefore, the Court denies Defendants' motion on Nissen's First Amendment retaliation claim.

### 3. Municipal Liability

Defendants argue that Nissen has failed to state a claim for municipal liability because she has failed to establish a permanent, widespread custom or policy, she has failed to establish a final policymaker whose conduct can be attributed to the County, and she has failed to identify a final policymaker that ratified the alleged conduct. Dkt. 56 at 16–20. In order to state a municipal liability claim, the plaintiff may allege that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). Although less than clear, Nissen does include allegations that the sheriff has final policymaking authority and personally participated in the alleged adverse employment actions. Dkt. 45, ¶¶ 6.10, 6.11, 6.40. Thus, Nissen has stated a claim for municipal liability.

## C. Conspiracy

A claim of civil conspiracy to violate civil rights requires the existence of an agreement or a meeting of the minds to violate the plaintiff's constitutional rights, and an

actual deprivation of those rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989). Moreover, "[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999).

In this case, Defendants argue that Nissen fails to allege sufficient facts to support a conspiracy. Defendants argue that Nissen "uses conclusory statements" to establish the conspiracy instead of alleging facts. Dkt. 56 at 27. While the Court agrees that Nissen includes numerous unnecessary and confusing conclusory statements, Nissen provides sufficient factual allegations to state a concerted effort to violate her constitutional rights. For example, Nissen alleges that Lindquist, numerous other prosecutors, "and Sheriff's Department officials . . . collectively retaliated against Nissen because she was not Lindquist's political supporter and she was a whistleblower who sought redress against him and his office." Dkt. 45, ¶ 6.3. Nissen also alleges that the "common objective among Lindquist and his co-conspirators was to discredit and silence Nissen for refusing to support Lindquist politically and for her whistleblower activities to include seeking redress against him and his office." *Id.* ¶ 6.4. Nisson goes on to list numerous "[e]xamples of the extreme, unrelenting, and blatant actions against" her. *Id.* ¶¶ 6.6A–G. To the extent that Nissen fails to allege a specific and explicit meeting of the minds, under controlling law she has alleged sufficient facts to establish a common objective and

concerted action. *See Gilbrook*, 177 F.3d at 856–57. At the very least, she has asserted sufficient allegations to infer concerted effort on a common objective of retaliation for exercising her First Amendment rights. At the end of the day, the evidence may establish only "conduct that *causes* other conduct, [instead of] an *agreement* to violate or to disregard the law." *United Steelworkers of Am.*, 865 F.2d at 1547 (Trott, J., dissenting). "The latter, of course, is the essence of a conspiracy; the former is not." *Id*. at 1547–48. At this point, however, the Court is satisfied that she has asserted sufficient allegations to overcome the motion to dismiss. Therefore, the Court finds that Nissen has stated a claim and denies Defendants' motion on this issue.

Defendants also argue that the conspiracy claim fails because the Court has dismissed Nissen's First Amendment claim against Nissen with prejudice. Dkt. 58 at 13. Defendants fails to cite any authority for this proposition, which alone is sufficient reason to dismiss the argument. The Court, however, ventured outside the record and discovered non-binding authority for the proposition that a § 1983 "[c]onspiracy is merely the mechanism by which . . . to impose liability on one defendant for the acts of the others performed in pursuance of the conspiracy." *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) (citing *Nesmith v. Alford*, 318 F.2d 110, 126 (5th Cir. 1963), *cert. denied*, 375 U.S. 975 (1964)). Thus, if Lindquist was not her employer and did not have the power to engage in adverse employment actions in retaliation for Nissen's protected activities, then he allegedly could have conspired with Nissen's supervisors to engage in adverse employment actions. In other words, conspiracy is merely the mechanism to impose liability on Lindquist for the acts of the sheriff's office in pursuance of retaliation

against Nissen. Thus, Nissen has alleged sufficient facts to overcome a motion to dismiss under these non-binding authorities.

**D.    Fourteenth Amendment**

Nissen asserts claims for violations of both her procedural and substantive due process rights. Regarding the former, Nissen is attempting to turn a defamation claim into a constitutional due process claim. "The termination of a public employee which includes publication of stigmatizing charges triggers due process protections." *Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998).

In this case, Nissen was not terminated. Instead, Nissen alleges that she was forced to resign. Dkt. 45, ¶ 6.42. In other words, Nissen resigned from her position and asserts that the County violated her constitutional rights by not giving her prior notice of her resignation and an opportunity to contest her resignation. Thus, Nissen's claim is based on the publication of false charges instead of the loss of a liberty interest without notice or an opportunity to contest false charges. Defamation, by itself, is not a violation of liberty interests. *Paul v. Davis*, 424 U.S. 693, 706 (1976). Therefore, the Court grants Defendants' motion on Nissen's procedural due process claim.

To the extent that Nissen argues that publication of false charges followed by an employee's resignation triggers an employer's duty to provide a hearing to contest the false charges, Nissen fails to provide any authority for this proposition. Thus, this alleged claim fails as a matter of law.

Regarding substantive due process, Nissen's allegations do not rise to the level of a constitutional violation. In order to state a claim, Nissen must allege conduct that

makes "it virtually impossible for [her] to find new employment in [her] chosen field." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007) *aff'd* 553 U.S. 591 (2008). Instead, Nissen alleges that Defendants' actions "diminished Nissen's value as a state's witness and restricted her employability in the community in positions that she is otherwise highly qualified to perform." Dkt. 45, ¶ 6.67. This allegation does not rise to the level of a constitutional violation. Therefore, the Court grants Defendants' motion on Nissen's substantive due process claim. The Court also denies Nissen leave to amend a third time. *See Reynolds v. City of Eugene*, 599 Fed. Appx. 667, 668 (9th Cir. 2015) ("A district court's discretion in deciding motions for leave to amend is 'particularly broad' when the court has already granted leave to amend.").

E. **Interference with Business Expectancy**

A claim for tortious interference with a contractual relationship or business expectancy requires five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997).

In this case, Defendants argue that Nissen has failed to state a claim because the conduct regarding the alleged impeachment evidence is governed by absolute immunity, Nissen's collective bargaining agreement was not breached, and Lindquist was exercising his legal interests by contesting her lawsuits and complaints. Dkt. 56 at 29–30. The

Court agrees with Defendants that these are all persuasive arguments if these were the only allegations stated in the complaint. Instead, Nissen alleges at least three contracts and future business expectancies as an expert witness. Dkt. 45, ¶ 6.81. Nissen also alleges that Lindquist knew of these relationships and expectancies and interfered with them to Nissen's detriment. Thus, Defendants have failed to address all of the allegations asserted in the complaint. Although Nissen's allegations may be meritless, the Court declines to *sua sponte* analyze the uncontested contracts and expectancies or allegations of interference. In other words, Defendants have failed to show that Nissen has not stated a claim upon which relief may be granted. Therefore, the Court denies Defendants' motion on this claim.

**F.     Wrongful Discharge**

Employees that are terminable for cause may assert a wrongful discharge claim based on unlawful retaliation. *Riccobono v. Pierce Cty.*, 92 Wn. App. 254, 266 (1998). Moreover, Washington courts allow claims for wrongful discharge in violation of public policy where the employee alleges that she was discharged for "engaging in 'whistleblowing' activity.'" *Becker v. Cmty. Health Sys., Inc.*, 182 Wn. App. 935, 942 (2014), *aff'd*, 184 Wn.2d 252 (2015) (citing *Dicomes v. State*, 113 Wn.2d 612, 618 (1989)).

In this case, Defendants move to dismiss Nissen's claim because (1) she fails to allege facts within the applicable statute of limitations, (2) she fails to establish the elements for constructive discharge, (3) she relies upon inapplicable authority to support

her claim, (4) she relies upon conduct shielded by absolute immunity, and (5) she does not identify clear public policy mandates. Dkt. 56 at 31–34.

First, Defendants argue that Nissen relies on conduct that occurred before the applicable statute of limitations. The Court agrees. Although Nissen correctly cites authority for the proposition that the statute of limitations begins to run when she communicated her discharge to her employer, Dkt. 57 at 38 (citing *Barnett v. Sequim Valley Ranch, LLC*, 174 Wn. App. 475, 486 (2013)), she argues that "she initially established her whistleblower status prior to the statutory period of November 2, 2012." Dkt. 57 at 37–38. Nissen fails to explain how the three-year statute of limitations dates back to November 2012 when she sent her letter of "forced resignation" on January 3, 2017. Regardless, Nissen alleges recent whistleblower activities of (1) continuing to litigate a public record act case against the prosecutor's office, (2) providing information to Mr. Busto during the investigation of the whistleblower complaints, and (3) supporting the police guild's bar complaint against Lindquist. Dkt. 45, ¶ 6.92. These activities occurred within three years from the date she gave notice of her resignation.

Second, Defendants argue that Nissen fails to allege facts to support a constructive discharge. Dkt. 56 at 32–33. Nissen, however, has alleged facts of ongoing harassment, bullying, work restrictions, and other intolerable conditions that the Court finds sufficient to state a claim. Dkt. 45, ¶¶ 6.97–6.99. Moreover, Nissen alleges that the intolerable conditions lasted up until the date of her separation, which is within the statute of limitations. Therefore, the Court finds that Nissen has alleged sufficient facts to support a claim of constructive discharge.

Finally, Defendants contend that the alleged acts of the prosecutors are shielded by absolute immunity and Nissen improperly cites statutes protecting state employees. Dkt. 56 at 33. While Nissen does allege facts regarding potential impeachment evidence, she also alleges numerous other facts regarding the conditions of her employment that are outside the official duties of a prosecutor. For example, Nissen alleges that prosecutors publically disparaged her by calling her a "suspect," "bipolar," "obsessed," and "crazy." Dkt. 45, ¶ 6.98. Nissen also alleges that the Pierce County Code establishes the clear public policy that whistleblowers shall not be retaliated against. *Id.* ¶ 6.92 (citing PCC 3.14). Therefore, the Court finds that Nissen has alleged sufficient facts to state a claim for wrongful discharge in violation of public policy and denies Defendants' motion on this claim.

**G.  Outrage**

In order to state a claim for intentional infliction of emotional distress, the plaintiff must allege: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Boker*, 149 Wn.2d 192, 195–96 (2003) (citations omitted). This tort also is synonymous with the tort of "outrage." *Id.* "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes*, 113 Wn.2d at 630.

In this case, Defendants argue that Nissen has failed to allege conduct sufficiently outrageous to support a claim. Dkt. 56 at 35–36. The Court disagrees. Nissen has

alleged that prosecutors falsely stated that Nissen was the suspect of a crime, she had mental health issues, and she was a liar and dishonest. Dkt. 45 at 6.115. The Court finds that a reasonable jury could conclude such conduct of an alleged concentrated effort by a prosecutor's office to attack a police officer with false claims is extreme and outrageous. Therefore, the Court denies Defendants' motion on this claim.

**H.    Breach of Contract**

In order to state a claim for breach of contract, Nissen must allege the existence of a valid and enforceable contract, her rights and Defendants' obligations under the contract, a violation of the contract by Defendant, and damages. *Citoli v. City of Seattle*, 115 Wn. App. 459, 476 (2002)

In this case, Nissen has stated at least one valid breach of contract claim. Nissen has alleged a valid settlement agreement between her and the County. Dkt. 45-1 at 58–59. The County agreed that it would not retaliate against Nissen for bringing her complaint against the County and the prosecutor's office. *Id*. Nissen alleges that County employees breached this provision by retaliating against her, and Nissen alleges resulting damages. Dkt. 45, ¶¶ 6.128–6.133. Therefore, Nissen alleges at least one valid breach of contract claim upon which relief may be granted, and the Court denies Defendants' motion on this issue.

**I.    Marital Community**

Defendants move to dismiss Lindquist's marital community because Nissen fails "to identify any link between the alleged conduct and the management of the community" and "also fails to identify any direct benefit conferred to the community

from any of the alleged, untruthful conduct." Dkt. 56 at 40. Nissen, however, has alleged that "Lindquist has used his office to promote himself and his community for personal and financial gain." Dkt. 45, ¶ 2.2. Nissen argues that "[a]n official's bad acts while carrying out his purported public duties obligate the community." Dkt. 57 at 46 (citing *Kilcup v. McManus*, 64 Wn.2d 771, 779 (1964)). Defendants counter that "[n]owhere in *Kilcup* does the court pronounce such a rule."[3] The Court agrees with Defendants that Nissen misrepresents *Kilcup* in paraphrasing the case to hold that all "bad acts" obligate a community. More accurately, Defendants cite the case for the proposition that acts involving "ignorance, carelessness or mistaken ideas" obligate a community. Dkt. 58 at 19 (citing *Kilcup*, 64 Wn.2d at 781). The court also stated that an official who exercises his powers "negligently, or in excess of his authority, or maliciously, does not relieve his community of liability as long as he was acting under the color or purported authority of his office." *Kilcup*, 64 Wn.2d at 782. Nissen has stated a claim for outrage, which includes reckless conduct. In the absence of contrary authority in the record, it would seem that acting recklessly would at least equate to acting maliciously. Therefore, at this point, Defendants have failed to show that Nissen has failed to state a claim against Lindquist's community, and the Court denies the motion on this issue.

---

[3] The Court agrees with Defendants and uses this as one example of Nissen's pleading practice that unnecessarily increases the work for Defendants and the Court. In Nissen's 238 footnote cites, she repeatedly cites cases generally without pinpointing the portion of the case she is relying upon.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 56) is **GRANTED in part** and **DENIED in part**. Nissen's Fourteenth Amendment claims are **DISMISSED with prejudice**. The parties shall file a joint status report regarding a proposed trial schedule no later than January 26, 2018.

Dated this 18th day of January, 2018.

BENJAMIN H. SETTLE
United States District Judge